J-S82007-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| PIERRE LAVON TATUM, | |
| Appellant | No. 1708 WDA 2016 |

Appeal from the Judgment of Sentence Entered October 13, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0014257-2015

BEFORE:  BENDER, P.J.E., STEVENS, P.J.E.[*], and STRASSBURGER, J.[**]

MEMORANDUM BY BENDER, P.J.E.:                FILED APRIL 06, 2018

Appellant, Pierre Lavon Tatum, appeals from the judgment of sentence of time served (13 months' and 23 days' incarceration), and a concurrent term of 6 years' probation, imposed following his conviction for drug offenses and related crimes.  Appellant challenges the sufficiency of the evidence.  He also contests the trial court's decision to admit a spreadsheet containing a summary of seized text messages, which the prosecution provided to the defense on the night prior to the first day of trial.  After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

_____

[*] Former Justice specially assigned to the Superior Court.
[**] Retired Senior Judge assigned to the Superior Court.

On October 4, 2016, prior to the commencement of the non-jury trial, a Suppression Hearing was held on the matter of whether Officer Modena made a valid vehicle stop on August 22, 2015. In opposition to the Suppression Motion, the Commonwealth called Officer Modena to testify.

Officer Modena has been a City of Pittsburgh Police Officer since January of 2005 and he has been assigned to Zone 2, the Hill District. Officer Modena characterized Zone 2, especially the Hill District, as a high crime area with drugs, shootings, drug dealing and drug using. On the day in question, August 22, 2015, Officer Modena was working the p.m. shift. At approximately 4:30pm that day, he observed a gray Jeep Cherokee in the area of Bedford Avenue in the Hill District. Specifically, the officer described it as the Bedford-Chauncey Projects, a high crime area with lots of drugs, shootings and firearm arrests.

On August 22, 2015, Officer Modena observed a white female driver in the Jeep and because of the high crime area, he attempted to conduct surveillance on the car. After approximately 10-15 minutes, the vehicle pulled out and Officer Modena was able to catch up to the vehicle and follow it down Liberty Avenue and 20th Street, where he conducted a traffic stop. Officer Modena explained the reason he conducted the traffic stop was due to the fact the vehicle had a dark gray smoke-covered plate making it hard to read the registration plate. After the vehicle stopped, Officer Modena approached the vehicle and asked the driver and two passengers for their licenses or identification. He then checked the licenses. The driver of the vehicle, Ms. Patterson, came back with a suspended license. The passengers were identified as Mr. Forsythe (front seat passenger) and [Appellant] (rear right side passenger) and they were either non-licensed or suspended. Since none of the three occupants had a valid driver's license, the officer called for a tow truck as standard policy.

Officer Modena re-approached the vehicle and asked Ms. Patterson to exit the vehicle. He informed her that she was going to be cited for the obscured plate and suspended license. He then approached the passengers and asked them if they had any weapons and they advised him they did not. The officer then asked for consent to do a pat down check and both agreed. There were negative results for weapons and the two passengers were moved to the rear of the vehicle.

- 2 -

Officer Modena then asked all the occupants if they needed anything out of the car: Ms. Patterson requested her purse and phone and Mr. Forsythe and [Appellant] retrieved their phones. The officer then proceeded to do an inventory to account for … valuables in the car as part of the tow policy. On the back passenger side where [Appellant] was seated the officer found what he believed to be a brick wrapper for packaging heroin, but no narcotics were in the wrapper. Officer Modena next found under the driver's seat a clear baggy with numerous bundles of heroin. He stated he believed it was heroin based on his years of training and experience. The drugs and the brick wrapper were seized for evidentiary purposes.

…

Immediately following the Suppression Hearing, the non-jury trial commenced. The Commonwealth called Officer Jordan Loscar to testify on its behalf. Officer Loscar has been employed with the City of Pittsburgh Police since March 17, 2014. On August 22, 2015, he was asked to assist Officer Modena on a traffic stop just before 6pm at the location of Liberty Avenue and 20th Street. When Officer Loscar arrived on the scene, Officer Modena was already on the driver's side of the vehicle, so he approached the passenger side. As back-up unit, Officer Loscar stayed at the passenger side of the vehicle while Officer Modena went back to his vehicle to run the information.

Officer Modena came back to the vehicle and told all the back-up officers to pull the occupants out of the vehicle. Officer Loscar was responsible for removing [Appellant] from the rear passenger side of the vehicle. Officer Modena next advised the officers that the occupants were to be placed into custody. Officer Loscar placed [Appellant] into custody and put him in the rear of his vehicle. Officer Loscar proceeded to gather basic information from [Appellant] to verify his identification, phone number and address. [Appellant] provided his name as Pierre Lavon Tatum; his address as 1016 Lemington Street, Johnstown, PA; and phone number as 814-270-330. Officer Loscar testified at the time of this traffic stop, he did not notice that [Appellant] only provided a 9 digit number. According to Officer Loscar, the reason none of [Appellant]'s numbers appeared in the arrest report is due to the fact the report will not accept anything lower than a 10 digit phone number.

The Commonwealth's second witness was Officer Todd Modena, who previously testified at the Suppression Hearing.

- 3 -

The officer identified Commonwealth's Exhibit 1 to be the five bricks of heroin he observed under the driver's seat in a clear plastic baggy.  Commonwealth's Exhibit 1 (a) is the clear plastic baggy that held the bricks of heroin.   The officer identified Commonwealth's Exhibits 1 (c) and 1 (d) as the crime lab reports that analyzed that the drugs in question were, in fact, heroin.   Officer Modena identified: Commonwealth Exhibit 2 as the black Galaxy phone of Ms. Patterson; Exhibit 3 as the Nokia phone with the red cover of [Appellant]; and Exhibit 4 as the black Motorola cell phone of Mr. Forsythe.   According to the officer, the phones were submitted to the property room initially and once the search warrants were obtained, the Mobile Crime Unit detectives performed an analysis of the phones.

Initially, the detectives had failed attempts to get into the phones of Ms. Patterson and [Appellant].  At a later date, Ms. Patterson provided the code to access her phone and the detectives were successfully able to download her Samsung Galaxy phone dumps.

Finally, Officer Modena testified that Exhibit 8, a photo of the floor under the driver's seat, shows that access from under the front seat from the front going back was hindered by an electrical cord of some type.  He also stated that the way he went into the vehicle to recover the narcotics was from the back and the packaged heroin was dead center under the driver's seat.

The Commonwealth next called Officer Matt Tracy to testify.  Officer Tracy has been employed as a Pittsburgh Police Officer for six years and the past year in the Pittsburgh Police Computer Crime Unit.  He underwent Secret Service training in regards to Cellebrite, which is a program used to analyze phones and computers, and has a Bachelor's degree in Information Systems.  Officer Tracy explained that Cellebrite is a software used to dump information from different devices, such as cell phones and iPads, etc.  The Computer Crime Unit, for example, will take a phone, plug it into their computer and the software pulls the data from the phone, then the data is put into an analyzer that puts it into a readable format.  Officer Tracy was then recognized as an expert witness in recovery of electronic data from cellular phones and other electronic data.

Officer Tracy personally reviewed the phone dumps performed by Detective Raymond Murray.   He testified

Commonwealth Exhibit 3(c), a dump from a SIM card from one of the three cell phones in evidence, tells him the phone number on this phone is 814-270-3306. Officer Loscar previously testified that [Appellant] informed the officer that his cell phone number was 814-270-330.

The Commonwealth and defense counsel stipulated that the drugs were packaged with the intent to deliver. The Commonwealth called [Detective] Philip Mercurio to testify as an expert in the field of narcotics and as to his review of the text messages in this case. He found text messages between Nancy Patterson and a person referred to as DC, and the messages are clearly indicative of heroin distribution. It further appeared to [Detective] Mercurio that the individual referred to as DC on the phone dump information was a drug dealer and that Nancy Patterson was involved in the distribution of heroin.

The Court admitted into evidence Commonwealth Exhibit 2(d), the summary of the cell phone records/text messages found on the phone dump from Ms. Patterson's cell phone. [Detective] Mercurio found multiple text streams between Nancy Patterson and DC that indicate heroin distribution. He was of the opinion that the person utilizing the phone number 814-270-3306 (DC/[Appellant]) was distributing heroin but was also using Nancy Patterson to distribute as well.

Nancy Patterson was the fifth witness called by the Commonwealth. Ms. Patterson admitted she was a co-defendant in this case and she identified [Appellant] as the defendant in the courtroom. She currently resides in Johnstown and has for the past twenty years. She first met [Appellant] [during] the summer of 2015 through a friend of her daughter for the purpose of purchasing heroin. When the person who introduced Ms. Patterson to [Appellant] told her his name, Ms. Patterson thought she said DC, but she really said PT. [Appellant] gave Ms. Patterson his cell phone number and said to call him if she needed anything. Ms. Patterson stored his number in her phone and labeled that contact as DC. She would call or text that number a lot for the purpose of obtaining heroin, and she recognized the voice as that of [Appellant]. She never had any reason to believe that the person she was texting was not [Appellant].

A few of the text message streams are summarized as follows:

On 6/8/15 there is an outgoing message to DC. "You around?" DC says yeah.

"Smoke want to get 2 bags[."] Ms. Patterson testified she meant 2 bags of heroin.

On 7/19/15 there is an outgoing message to DC. "R u awake? I need to grab two more—two more them[."] She was referring to two more bags of heroin.

On 8/1/15 there is an incoming message from DC. "Make some calls so you can make some money[."] Ms. Patterson replied, "K I will[."] Then, "I can't get ahold of anyone[."] She admitted she tried to make some calls to sell heroin, but couldn't get ahold of anyone.

On 8/7/15 Ms. Patterson sent DC a text looking for 2 bags of heroin and on 8/11/15 there was an incoming message from DC that he had some bags.

On 8/20/15 Ms. Patterson sent DC a text "How much u charge for a bun[."] She explained that a bun equals 10 stamp bags. DC replied $70.

[]Commonwealth's Exhibit 2(d).

On August 22, 2015, Ms. Patterson drove [Appellant] to Pittsburgh to pick up heroin and Mr. Forsythe was a passenger in the vehicle. She admitted to taking him to Pittsburgh prior to August 22, 2015, to get heroin. [Appellant] would compensate them for the drive by putting gas in the vehicle and giving them a bun or 10 stamp bags of heroin. Once they got closer to Pittsburgh, [Appellant] told her where to go in the Hill District. They stopped at a housing project.

After Ms. Patterson parked, [Appellant] exited the vehicle and told her to turn the other way. He walked down the street, went into an apartment, came back out, crossed the street and went into a little corner store. He then walked back down the street and entered the vehicle in the rear, but she did not see him carrying anything. He told her to pull out and she observed an officer, in a marked vehicle, parked and facing her vehicle. The officer followed them and eventually hit his lights for them to pull over. [Appellant] told her to keep moving, but Ms. Patterson said "No, I have to pull over." She put on her turn signal pulled over and put the car in park. [Appellant] then

- 6 -

threw a package up to Ms. Patterson and told her to hide it up her dress, but she threw it back to him. Ms. Patterson was shown Commonwealth's Exhibit 1 and 1(a). She identified them as the plastic baggy and heroin that was thrown at her.

Mr. Leonard Forsythe was the Commonwealth's final witness. He stated he travelled to Pittsburgh on August 22, 2015 with Nancy Patterson and [Appellant]. They drove up to the Hill District: Nancy was driving, Leonard was in the front passenger seat and [Appellant]/DC was in the back seat. He calls Pierre DC because Nancy told him that was his nickname.

When they arrived at the apartment building in the Hill District, [Appellant] jumped out of the car, ran to the top of the hill, then came back down and ran across the street to a little corner store. Mr. Forsythe and Ms. Patterson turned to face the other way and that's when he noticed a police officer parked up on the hill. Next, [Appellant] jumped into the vehicle and they started to leave with the police officer following them.

When they reached Liberty Avenue, the officer activated his lights and pulled them over. According to Mr. Forsythe, a white bag came flying up to the front seats and [Appellant] said to hide this. Nancy Patterson threw the bag back and said something to the effect[,] ["]this shit ain't mine, I'm not hiding it.["]

TCO, 5/11/17, at 3-14 (citations to record omitted).

The Commonwealth charged Appellant with possession with intent to deliver a controlled substance (PWID), 35 P.S. § 780-113(a)(30); possession of a controlled substance, 35 P.S. § 780-113(a)(16); and criminal conspiracy (to commit PWID), 18 Pa.C.S. § 903. Appellant filed a motion to suppress the seized contraband, which the trial court denied following a hearing on October 4, 2016. This case immediately proceeded to a non-jury trial, with the parties agreeing by mutual consent to incorporate the testimony from the suppression hearing. On October 6, 2016, the trial concluded, but for the rendering of the court's verdict. On October 13, 2016, the trial court

found Appellant guilty on all counts, and immediately sentenced him to time served, plus six years' probation for PWID, and no further penalty with regard to the remaining counts. Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on May 11, 2017.

Appellant now presents the following questions for our review:

I. Did the Commonwealth fail to present sufficient evidence to support [Appellant]'s convictions...?

[II]. Did the trial court abuse its discretion in admitting Court Exhibit A, as the exhibit had only been disclosed to [Appellant]'s counsel the night before trial?

Appellant's Brief at 5.

Appellant's first claim concerns the sufficiency of the evidence, and is three-pronged, but interrelated. He first argues that the evidence was insufficient to demonstrate his constructive possession of the seized heroin based on the circumstances of its discovery. Second, Appellant contends that the testimony of Patterson and Forsythe was so "contradictory on the essential issues" that the resulting verdict constituted mere conjecture on the part of fact-finder. Id. at 24. Third, Appellant argues that text-message evidence failed to demonstrate the existence of a conspiracy to commit PWID. Because the second prong informs Appellant's claims with respect to the first and third, we begin our analysis with that issue.

Our standard of review of sufficiency claims is well-settled:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support

- 8 -

the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Normally, as Appellant acknowledges, claims directed toward the credibility of witnesses "challenge the weight, not the sufficiency, of the evidence." Commonwealth v. Lopez, 57 A.3d 74, 80 (Pa. Super. 2012). Nevertheless, Appellant asserts the exception espoused by our Supreme Court in Commonwealth v. Farquharson, 354 A.2d 545 (Pa. 1976). In Farquharson, the Supreme Court acknowledged the general rule, indicating that "[t]raditionally[,] under our system of jurisprudence, issues of credibility are left to the trier of fact for resolution." Id. at 550. However, the Court recognized that:

This concept ... must be distinguished from an equally fundamental principle that a verdict of guilt may not be based upon surmise or conjecture. Following this principle, courts of this jurisdiction have recognized that where evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding.

Id.   The Farquharson Court identified this as the Bennett[1] principle.

Accordingly, in extremely limited circumstances, this Court must reject the

credibility assessment of a factfinder on sufficiency grounds.[2]   Nevertheless,

in Farquharson, our Supreme Court determined that the credibility issues

in that case did not amount to a sufficiency problem.

   Appellant contends that the instant case presents an exception to the

general rule.   He argues that Patterson's testimony was "legally insufficient"

because 1) she initially told police she did not know to whom the heroin

belonged; 2) she was receiving favorable treatment from the Commonwealth

in exchange for her testimony; 3) she was in a romantic relationship with

Forsythe; 4) she was a drug addict; and 5) her testimony was inconsistent in

_____

[1] Commonwealth v. Bennett, 303 A.2d 220 (Pa. Super. 1973).

[2] For instance, one could imagine a scenario where all of the elements of a crime, or the most critical elements, derived solely from a single witness's testimony.   If the credibility of such testimony was wholly contingent on the witness's claim to possess superhuman powers, such as the ability to observe the alleged criminal conduct through a brick wall (absent any technological assistance), then an appellate court must reject such a claim on sufficiency grounds.   This is because such testimonial evidence would be "in contravention to human experience and the laws of nature[.]"   Widmer, supra.   Moreover, if the Commonwealth's case hinges on the testimony of a single witness, and that testimony is "so contradictory as to render it incapable of reasonable reconciliation," it may been deemed insufficient. Farquharson, 354 A.2d at 550.   In other words, the sufficiency standard assumes the credibility of witnesses, but only up to a point where the testimony hinges on the factfinder's acceptance of impossible or virtually impossible claims, or where conflicting testimony of a single witness cannot be reasonably reconciled.   This Court is not bound to accept, for sufficiency purposes, any fact that is contingent on pure fantasy.

other regards.[3]  See Appellant's Brief at 23-26.  Appellant raises similar arguments about Forsythe's testimony.  Id. at 26-27.

None of these assertions concerning Forsythe's or Patterson's credibility give rise to a sufficiency claim under the theories espoused in the Farquharson/Bennett line of cases.  In Bennett, the Commonwealth's sole witness, Jones, who had confessed to stealing a car, "sought to implicate the defendant by giving several wholly different, conflicting and inconsistent versions of when and how he had told her that the car had been in fact stolen by him," leading to the defendant's conviction for receiving stolen property.  Bennett, 303 A.2d at 220.  "With each new version[,] Jones would recant the previous one and protest that the newest version was in fact the true one."  Id. at 220–21.  This was critical because the defendant's knowledge that the car was stolen was the heart of the Commonwealth's case against her for receiving stolen property, and Jones' testimony was the prosecution's only evidence of such knowledge.

Unfortunately, the Bennett decision does not detail with specificity how many times Jones' story changed, but it does leave a strong impression that it was not merely once, and that it was not merely a denial upon arrest coupled with in-court testimony that was inconsistent with that initial denial.

_____

[3] Appellant contends that Patterson testified inconsistently regarding how she was compensated for providing transportation for Appellant, and concerning the ownership of the vehicle involved in this incident.  See Appellant's Brief at 26.

The Bennett decision suggests, instead, that Jones offered the jury multiple, incompatible statements – at trial – on the critical issue of the defendant's knowledge about whether the car was stolen. None of the statements were corroborated by any other witnesses or evidence.

By comparison, in this case, Forsythe and Patterson corroborated each other's testimony concerning all the elements of possession, PWID, and conspiracy. Neither witness testified inconsistently about the basic, most critical facts at trial: that Appellant was distributing heroin, and that on the day in question, Patterson agreed to provide him with transportation for that purpose. Appellant's identification of inconsistent testimony regarding the means by which he compensated Patterson for her services, as well as her recollection regarding the ownership of the vehicle, were tangential matters that were not critical to the elements of the charged offenses in this case. Moreover, Forsythe and Patterson's relationship and drug problems were issues put before the jury to weigh when judging their credibility. Those matters do not arise to the level of testimony based on pure fantasy or impossibility, and the witnesses' mutual corroboration of the critical facts of this case is nothing like the internal contradictions of a single witness's testimony, as was at issue in Bennett. Accordingly, we ascertain that the instant matter is not analogous to the exception recognized in Bennett and Farquharson. Instead, the general rule applies; therefore, we must reject this aspect of Appellant's sufficiency claim.

Appellant also asserts that the evidence was insufficient to demonstrate his constructive possession of the seized heroin or the existence of a conspiracy.

> When contraband is not found on the defendant's person, the Commonwealth must establish "constructive possession," that is, the power to control the contraband and the intent to exercise that control. The fact that another person may also have control and access does not eliminate the defendant's constructive possession; two actors may have joint control and equal access and thus both may constructively possess the contraband. As with any other element of a crime, constructive possession may be proven by circumstantial evidence. The requisite knowledge and intent may be inferred from examination of the totality of the circumstances. The fact that the contraband is located in an area usually accessible only to the defendant may lead to an inference that he placed it there or knew of its presence.

Commonwealth v. Haskins, 677 A.2d 328, 330 (Pa. Super. 1996) (citations omitted).

Instantly, Appellant argues:

> The Commonwealth failed to prove [Appellant]'s ability and intent to exercise control over the heroin. [Appellant] was one of three passengers in the Jeep where the heroin was found. He did not own the car and therefore, had no possessory interest in its contents. Furthermore, the heroin was found under the driver's seat and [Appellant] was seated in the rear of the car. Modena testified that there was some kind of electrical cord or circuit underneath the driver's seat. Modena did not concede that the cord and plug were blocking access to underneath the seat. Rather, his exact testimony was, "I would say they [cord and plug] would make access a little more difficult since they were in the way." The trial court determined that, based partly upon Modena's testimony about the seat arrangement, the only plausible way for the heroin to get under the driver's seat was for [Appellant] to have placed it there.

Appellant's Brief at 20-21 (citations omitted).

Appellant concedes, however, that the trial court found Forsythe and Patterson's testimony to be sufficient to demonstrate Appellant's constructive possession of the heroin. Id. at 21. Patterson specifically identified the heroin package as having been in Appellant's possession immediately prior to its seizure. N.T., 10/4/16–10/6/16, at 204. Forsythe then corroborated her testimony in this regard. Id. at 250. This testimony was itself sufficient to demonstrate Appellant's constructive possession of the heroin. See Commonwealth v. Hopkins, 67 A.3d 817, 821 (Pa. Super. 2013) (holding that an officer's testimony, that he had observed the defendant "hide two bricks of heroin[,]" was sufficient to demonstrate the defendant's constructive possession thereof). Although Officer Modena's testimony further corroborated this fact, his testimony was superfluous to the direct observations made by Patterson and Forsythe. Accordingly, we reject this aspect of Appellant's sufficiency claim as well.

Similarly, Appellant contends that the text messages were "manifestly vague" and, therefore, could not provide sufficient evidence of a conspiracy in this case. Appellant's Brief at 27. We disagree. Like Officer Modena's testimony regarding Appellant's constructive possession of the heroin, the text-message evidence in this case was superfluous to Patterson's testimony regarding the elements of conspiracy. Patterson testified that she was transporting Appellant for the express purpose of aiding Appellant's distribution of heroin. See TCO at 18-19. As such, this aspect of Appellant's sufficiency claim also lacks merit.

Next, Appellant contends that the trial court abused its discretion when it admitted a spreadsheet of the text messages discovered on Patterson's cellphone. Appellant asserts that the spreadsheet was not disclosed to his defense attorney until the night prior to trial, in violation of the discovery rules.

Pa.R.Crim.P. 573 provides, in pertinent part, as follows:

(B) Disclosure by the Commonwealth.

(1) Mandatory. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

* * *

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence; []

* * *

(D) Continuing Duty to Disclose. If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

(E) Remedy. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573.

> As our Supreme Court has noted: "questions involving discovery in criminal cases lie within the discretion of the trial court and that court's decision will not be reversed unless such discretion was abused." Commonwealth v. Rucci, 543 Pa. 261, 283, 670 A.2d 1129, 1140 (1996), cert denied 520 U.S. 1121, 117 S.Ct. 1257, 137 L.Ed.2d 337 (1997). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." Commonwealth v. Hess, 745 A.2d 29, 31 (Pa. Super. 2000).

> Our Supreme Court has emphasized: "The purpose of our discovery rules is to permit the parties in criminal matters to be prepared for trial; trial by ambush is contrary to the spirit and letter of those rules and will not be condoned." Commonwealth v. Appel, 547 Pa. 171, 204, 689 A.2d 891, 907 (1997); Commonwealth v. Moose, 529 Pa. 218, 235, 602 A.2d 1265, 1274 (1992). Our Court has also recognized that, "generally, the purpose of discovery is to accord a defendant the opportunity to discover evidence which he did not know existed, as well as to seek possession of evidence of which he was aware." Commonwealth v. Fox, 422 Pa. Super. 224, 619 A.2d 327, 334 (1993), appeal denied 535 Pa. 659, 634 A.2d 222 (1993) (internal quotation omitted). Consequently, "the Commonwealth should exercise the utmost good faith to disclose to defendant all material evidence in its possession when faced with a mandatory discovery request." Commonwealth v. Schwartz, 419 Pa. Super. 251, 615 A.2d 350, 358 (1992), appeal denied 535 Pa. 617, 629 A.2d 1379 (1993) quoting Commonwealth v. Thiel, 323 Pa. Super. 92, 470 A.2d 145 (1983).

Commonwealth v. Long, 753 A.2d 272, 276 (Pa. Super. 2000).

Appellant's defense counsel first objected to the late disclosure of the spreadsheet on the first day of trial. N.T., 10/4/16–10/6/16, at 105. The trial court agreed that the spreadsheet was not timely disclosed to the

defense, and afforded defense counsel additional time to review the document. Id. at 108 ("[W]e'll give her the night or whatever time she needs in the morning[.]"). The following morning, defense counsel renewed her objection when the Commonwealth sought to introduce the spreadsheet evidence through the testimony of Detective Mercurio. Id. at 116. After a lengthy discussion about whether the disclosure was untimely (despite the trial court's apparent ruling the previous day that it was, in fact, untimely), see id. at 116-29, the trial court asked defense counsel: "Yesterday when this issue was raised by you, I [asked] you whether you wanted a continuance to review the spreadsheet. Did you have sufficient time between when you received the summary sheet … and today to review the sheet?" Id. at 129. Defense counsel responded, "I have." Id. The court then asked, "Then what's the prejudice? Tell me. Because the rule is clear and the committee notes and comments are clear, the most drastic remedy this [c]ourt can impose as a sanction is to exclude evidence." Id. at 129-30. Under further questioning, defense counsel then admitted that the spreadsheet was a summary of otherwise admissible evidence: the underlying text messages. Id. at 130. Defense counsel continued to demand exclusion of the spreadsheet summary as the only acceptable remedy for the discovery violation. The trial court refused to exclude it, but again indicated its willingness to provide defense counsel with another continuance to review the spreadsheet, and also indicated that it would allow the defense to call an expert to refute the summary. Id. at 132.

Nevertheless, defense counsel ultimately indicated that she was ready to proceed. Id. at 133.

Appellant now complains that the trial court's remedy was not sufficient to correct the prejudice of the untimely disclosure of the spreadsheet, stating "the trial court's remedy of a one-day continuance was inadequate and simply not enough time for [Appellant's trial counsel] to properly prepare how to handle [the spreadsheet]." Appellant's Brief at 32. Appellant notes that: "Public [D]efender's offices are chronically underfunded and understaffed." Id.

However,

[i]f a discovery violation occurs, the court may grant a trial continuance or prohibit the introduction of the evidence or may enter any order it deems just under the circumstances. Pa.R.Crim.P. 573(E) (formerly Rule 305(E)). The trial court has broad discretion in choosing the appropriate remedy for a discovery violation. Commonwealth v. Johnson, 556 Pa. 216, 727 A.2d 1089 (1999). Our scope of review is whether the court abused its discretion in not excluding evidence pursuant to Rule 573(E). Id. (citing Commonwealth v. Jones, 542 Pa. 464, 668 A.2d 491 (1995)).

A defendant seeking relief from a discovery violation must demonstrate prejudice. Id. (citing Commonwealth v. Counterman, 553 Pa. 370, 719 A.2d 284 (1998)). A violation of discovery "does not automatically entitle appellant to a new trial." Jones, 668 A.2d at 513 (Pa. 1995). Rather, an appellant must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure. Id. (citing Commonwealth v. Chambers, 528 Pa. 558, 599 A.2d 630, 636–38 (1991) (no error in denial of mistrial motion for untimely disclosure where appellant cannot demonstrate prejudice)).

Commonwealth v. Causey, 833 A.2d 165, 171 (Pa. Super. 2003).

We conclude that the trial court did not abuse its discretion when it declined to exclude the spreadsheet based on the Commonwealth's discovery violation. Appellant did not complain at trial that the initial one-day continuance was inadequate to prepare a strategy to respond to the spreadsheet. Instead, in formalistic fashion, Appellant's counsel insisted on exclusion as the only acceptable remedy, despite her indication that she was able to proceed after the court offered a second continuance to review the untimely-disclosed evidence. Indeed, Appellant provided no argument as to how or why the purported prejudice resulting from the late disclosure was inadequately remedied by the additional time afforded to review the document. Additionally, the resulting prejudice was necessarily minimal, as defense counsel conceded at trial that the spreadsheet was merely a summary of otherwise admissible evidence, and thus could not properly be characterized as an attempt to ambush the defense. There is no indication that anything in the spreadsheet was exculpatory in nature. Moreover, when offered even more time to review the document, or the opportunity to obtain an expert to refute the spreadsheet, defense counsel declined.

Accordingly, we conclude that the trial court did not abuse its discretion when it refused to exclude the spreadsheet. Although the Commonwealth violated the discovery rules in a technical sense, the resulting prejudice was minimal. Furthermore, the trial court's remedy was proportional to the violation, if not outright generous to the defense. Consequently, Appellant's second claim lacks merit.

Judgment of sentence affirmed.

President Judge Emeritus Stevens joins this memorandum.

Judge Strassburger files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/6/2018